# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF ILLINOIS
# EASTERN DIVISION

| | |
|---|---|
| JASMINE M. TELLEZ,<br><br>        Plaintiff,<br><br>    v.<br><br>WAUKEGAN ILLINOIS HOSPITAL COMPANY LLC d/b/a VISTA HEALTH SYSTEM,<br><br>        Defendant. | Case No. 07 C 2789<br><br>Hon. Harry D. Leinenweber |

## MEMORANDUM OPINION AND ORDER

Plaintiff Jasmine Tellez (hereinafter, the "Plaintiff" or "Tellez") filed a two-count complaint against her former employer, Defendant Waukegan Illinois Hospital Company LLC d/b/a Vista Health System (hereinafter, the "Defendant" or "Vista"). In Count I of her Complaint, Plaintiff alleges sexual discrimination based upon her pregnancy. In Count II, Plaintiff alleges interference with, and retaliation for, exercise of her rights under the Family Medical Leave Act (the "FMLA"). Defendant now moves for summary judgment on all counts, and also moves to strike portions of Plaintiff's responses and affidavit. For the reasons stated below, the Motion to Strike is **granted in part and denied in part,** and the Motion for Summary Judgment is **granted in part and denied in part.**

## I. BACKGROUND

Plaintiff Jasmine Tellez was hired by Defendant in May 2002 as a patient registrar, and she worked both in the emergency room and

outpatient sections of the hospital.  In that position, Plaintiff received training about the proper access and disclosure of protected health information.  Tellez also signed both the Vista Health Confidentiality Agreement and the CHS Code of Conduct, in which she agreed to access and use patient information only when necessary to perform her job.

In July 2006, Defendant determined that Plaintiff had accessed a patient's medical records for reasons unrelated to her job duties.  Tellez provided an explanation for her conduct and disputed any conclusion of wrongdoing, but Vista nonetheless issued an Employee Disciplinary Action Notice on August 11, 2006, stating that Plaintiff's improper access of confidential patient information was a serious violation of hospital policy.  It further stated that the notice was a final written warning and that "any further . . . policy infraction or unprofessional behavior will result in [Tellez's] termination."  Vista presents evidence that it investigated three other registrars for similar misconduct and provided each with similar final written warnings.

Shortly after receiving this final written warning, Tellez discovered that she was pregnant.  (Though the parties dispute whether she found out August 15 or September 21, 2006, both sides agree that Tellez's pregnancy was unknown to both Plaintiff and Defendant at the time of the August 11 disciplinary notice).  Tellez informed her immediate supervisor, Ellen Anderson ("Anderson"), about the pregnancy as soon as she found out, and Anderson told Tellez to

fill out FMLA paperwork if she wanted to take leave for the birth of her child. Tellez had a certification form filled out by her doctor on November 9, 2006; she submitted her paperwork on November 11; and her request for FMLA leave was granted November 17.

The FMLA approval was dated back to September 28, in order to encompass two periods of absence (September 28 through October 1, 2006 and October 10 through October 16, 2006) resulting from complications with Plaintiff's pregnancy. Tellez believes that other absences and instances of tardiness during October and November were also due to complications with her pregnancy, but she fails to identify specific dates for which complications were the actual cause of her absence, or provide medical documentation of such absences. Yet, Plaintiff's FMLA doctor certification form does note the possibility of intermittent absences, and Tellez claims she advised Anderson that she might need to be late in the future due to such complications. Plaintiff further claims (but Defendant disputes) that she made a request for light duty in November 2006, which was granted periodically, but then removed after a period of a few weeks, or on occasion after just one day.

In late November 2006, a patient contacted Vista to complain about her interactions with Tellez during a recent emergency room visit. Ginger Johns ("Johns"), Director of Patient Access, states that she investigated the matter by interviewing Tellez, all other registrars, and the patient complainee. Plaintiff, by contrast, claims that Johns refused to let Plaintiff tell her side of the story

before imposing discipline, and that her interactions with the patient were entirely appropriate. Johns completed a Corrective Action Form dated November 29, 2006, noting the patient's complaint and Tellez's episodes of absenteeism and tardiness. Although Johns only intended to issue a warning, she was informed by human resources of Plaintiff's earlier final written warning, and Vista made the decision to terminate Tellez.

Following her termination, Tellez proceeded with Vista's internal grievance process. During that process, Vista removed the notations of absenteeism and tardiness from the Corrective Action Form "so they would not be improperly interpreted as a basis for [Tellez's] termination, as several of the episodes could have been related to Jasmine Tellez's pregnancy." Vista treated all of Tellez's absences and instances of tardiness as excused, but upheld Tellez's termination on the basis of the August 11 final written warning and the subsequent patient complaint.

## II. **ANALYSIS**

### A.  Motion to Strike

The majority of Defendant's motion to strike attacks responses by Plaintiff which are merely conclusory or unresponsive. Responses such as these, which dodge the actual statement presented, or provide a kind of "yes, but" explanation, are clearly impermissible under Local Rule 56.1(b). *See Flores v. Chicago Transit Authority*, 2006 WL 2868904, at *1 (N.D.Ill., Oct. 4, 2006). But they are not uncommon. (Indeed, Defendant commits the same transgression). The Court has

ample experience identifying such unresponsive answers and deeming the unrebutted facts admitted. The above statement of facts fully accounts for the Court's review of the parties' submissions, and no further explication of these factual statements is necessary.

While unresponsive answers result in a statement of fact being deemed admitted, the Court should strike the affidavits upon which those answers rely only if the statements in the affidavit are inherently contradictory to the affiant's prior deposition testimony. *See Bank of Illinois v. Allied Signal Safety Restraint Systems*, 75 F.3d 1162, 1169 n.10 (7th Cir., 1996). Very few of Plaintiff's responses meet this standard of actual contradiction.

For example, in paragraphs 14, 45, and 49, Defendant seeks to bind Plaintiff to her earlier acknowledgment of the existence of disciplinary notices and the reasons stated therein. Yet, the actual language of those paragraphs reaches much further, by claiming that the discipline was "for," "in order to," and "based on" underlying conduct which Plaintiff disputes. Plaintiff's earlier acknowledgment of Defendant's stated reasons does not bind her now to admit that such underlying conduct was the actual basis or motivation for the discipline imposed. Her responses, and the corresponding portions of her affidavit that set forth her version of the facts, do not contradict the limited acknowledgment of her deposition, and they need not be stricken.

Only Plaintiff's response to paragraph 33, and Plaintiff's corresponding affidavit testimony, reach the level of actual

inconsistency.  Defendant's statement that Tellez understood FMLA to cover "any problems with [her] pregnancy" is clearly supported by Plaintiff's deposition testimony, and brings into question Plaintiff's current assertion that she did not understand that FMLA would cover unforeseeable complications.  Plaintiff's affidavit does nothing to demonstrate any ambiguity in the deposition question or any misunderstanding on her own part.  Her broad admission that she understood FMLA to cover *any* problem with her pregnancy therefore stands, and the response and affidavit statement to the contrary are stricken.  The Motion to Strike is **granted to this limited extent**, but otherwise denied.

### B.  Motion for Summary Judgment

Summary judgment is inappropriate where the evidence is sufficient to allow a reasonable jury to return a verdict in favor of the non-moving party.  *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The Court therefore views the evidence in the light most favorable to the non-moving party and resolves all factual disputes in her favor.  *See Abdullahi v. City of Madison*, 423 F.3d 763, 773 (7th Cir., 2005).  However, the opposing party must go beyond the allegations and denials of her pleadings and identify specific evidence which demonstrates a genuine issue of material fact.  *See* Fed. R. Civ. P. 56(e)(2); *Mills v. First Federal Sav. & Loan Ass'n of Belvidere*, 83 F.3d 833, 840 (7th Cir., 1996).  If Plaintiff fails to produce evidence sufficient to establish an essential element of her case, that failure "necessarily renders all other

facts immaterial." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

### *1. FMLA Interference*

The Family Medical Leave Act (the "FMLA") provides an eligible employee up to twelve weeks leave for the birth and care of a child, and guarantees that she is returned to the same or an equivalent position upon her return. *See* 29 U.S.C. §§ 2612(a)(1)(A), 2614(a)(1). It also permits either intermittent or extended leave for a serious health condition which makes the employee unable to perform the duties of her job. *See* 29 U.S.C. §§ 2612(a)(1)(D), 2612(b)(1). To enforce these substantive entitlements, the Act prohibits an employer from interfering with, restraining, or denying an employee's rights under the FMLA. *See* 29 U.S.C. § 2615(a)(1).

To prove a case of interference, Plaintiff need not make any showing of discriminatory intent on the part of her employer. *See King v. Preferred Technical Group*, 166 F.3d 887, 891 (7th Cir., 1999). She simply has to show that she was denied a benefit to which the Act entitles her. *See Burnett v. LFW Inc.*, 472 F.3d 471, 477 (7th Cir., 2006). Accordingly, Plaintiff must demonstrate that: (1) she was eligible for FMLA's protections; (2) her employer was covered by the FMLA; (3) she was entitled to leave under the FMLA; (4) she provided sufficient notice of her intent to take leave; and (5) the employer denied her FMLA benefits to which she was entitled. *See id.* Defendant does not dispute the first two elements, and, at least for

purposes of summary judgment, Defendant has conceded the adequacy of Plaintiff's notice.

Nor does Defendant raise a serious defense regarding Plaintiff's entitlement to leave. The FMLA doctor certification form submitted by Plaintiff clearly confirms Plaintiff's pregnancy and the complications thereto. It further notes the possible need for intermittent absences, and Plaintiff alleges that many of her absences throughout October and November 2006 were, in fact, due to such complications. Indeed, Defendant itself acknowledges that some of Plaintiff's absences "could have been related to [Tellez's] pregnancy." This is more than enough to raise a genuine issue of material fact regarding Plaintiff's entitlement to leave.

Defendant's argument for summary judgment rests on its contention that Defendant provided Plaintiff all the benefits to which she was entitled and did not deny any of her rights under the FMLA. Indeed, in many respects, Defendant's conduct was a model of compliance. Defendant encouraged Plaintiff to file FMLA paperwork; granted her request for FMLA leave; backdated Plaintiff's leave to cover two earlier periods of absence; and permitted Plaintiff to return to her previous position following these instances of approved leave. Yet Defendant fails to address the other absences for which it later disciplined Plaintiff - absences which (arguably) should have been deemed FMLA leave. To count these absences as unexcused, and then fire Plaintiff on that basis, clearly denies Plaintiff the fundamental benefit the FMLA was designed to provide her. Nor does

Defendant's later removal of the absentee notation require this Court (or a reasonable jury) to find that Plaintiff's rights were not denied. At the time of Plaintiff's actual termination (which Defendant makes clear is the time at which Tellez was provided with and signed the Corrective Action Form), Plaintiff's absences were not treated as excused, and remained a stated reason for her discharge. Plaintiff therefore raises a genuine issue of material fact that she was denied FMLA benefits to which she was entitled, and Defendant's Motion for Summary Judgment is **denied** as to this claim.

### *2. FMLA Retaliation*

Separate and apart from the statutory protections against interference, the Seventh Circuit has found that the FMLA also prohibits retaliation against an employee based upon her exercise of FMLA rights. *See King*, 166 F.3d at 891. *See also* 29 C.F.R. § 825.220(c) (prohibiting employers from "discriminating against employees . . . who have used FMLA leave"). For a claim of retaliation, the intent of Plaintiff's employer is essential, and Plaintiff cannot succeed upon a mere showing that she was denied benefits to which she was due. *See King*, 166 F.3d at 891. Nor can Defendant's denial of leave be the action which Plaintiff claims to be retaliatory. Defendant's alleged failure to count certain absences as excused leave has been fully accounted for in Plaintiff's claim of FMLA interference, and there is no need to relitigate it under the separate label of retaliation. *See Williams v. Illinois Dept. of Corrections*, 2007 WL 772933, at *8 (S.D.Ill., Mar. 9, 2007).

Instead to succeed on this claim, Plaintiff must show that Defendant intended to terminate her in retaliation for FMLA leave which was actually taken and approved. She may make this showing using either the direct or indirect method. *See Buie v. Quad/Graphics, Inc.*, 366 F.3d 496, 503 (7th Cir., 2004).

Under the indirect method, Plaintiff clearly fails to carry her burden. To establish a *prima facie* case, Plaintiff must demonstrate that she: (1) engaged in statutorily protected activity; (2) was performing her job according to her employer's legitimate expectations; (3) suffered a materially adverse action; and (4) was treated worse than a similarly situated employee who did not engage in protected activity. *See Scaife v. Cook County*, 446 F.3d 735, 739 (7th Cir. 2006). Although Defendant concedes the first and third elements, Plaintiff makes absolutely no showing that she was meeting her employer's legitimate expectations or that similarly situated employees were treated more favorably. Indeed, after incorrectly stating that Defendant conceded the first *three* elements, and that Plaintiff need only prove the fourth, Plaintiff's brief is *entirely devoid* of *any* discussion about similarly situated individuals who were treated more favorably. Nor does Plaintiff's Statement of Additional Material Facts succeed in providing this information. Plaintiff fails to establish her *prima facie* case under the indirect method, and she must rely instead on the direct method of proving her claim.

Under the direct method, Plaintiff must show either a direct acknowledgment of discriminatory intent by Defendant or a convincing mosaic of circumstantial evidence. *See Lewis v. City of Chicago*, 496 F.3d 645, 651 (7th Cir., 2007). Circumstantial evidence can include "suspicious timing, ambiguous statements . . . and other bits and pieces from which an inference of discriminatory intent might be drawn." *Troupe v. May Dept. Stores Co.*, 20 F.3d 734, 736 (7th Cir., 1994). The circumstantial evidence presented "must point directly a discriminatory reason" for the employer's action, however, and be related directly to the employment decision. *See Roney v. Illinois Dept. of Transp.*, 376 F.Supp.2d 857, 875 (N.D. Ill., 2005).

In this case, Plaintiff fails to present sufficient evidence under the direct method to withstand summary judgment. Importantly, the November 29 Corrective Action Form (which resulted in Plaintiff's termination) does not list any of Plaintiff's *excused FMLA absences* as a basis for her termination. Nor does it make any mention of Plaintiff's future approved leave or the submission of her FMLA request. The notice simply evinces dissatisfaction with the number of Plaintiff's (unexcused) absences, and a decision to terminate her therefor. While these absences arguably should have been treated as excused leave under the FMLA, Defendant's failure to so treat them is a denial of Plaintiff's substantive rights under the FMLA (fully accounted for in Plaintiff's above claim of FMLA interference). The Corrective Action Form does not provide any direct or circumstantial evidence to support a separate claim of retaliation.

The only evidence supporting Plaintiff's claim of retaliation is that her termination was suspiciously close in time to the approval of her FMLA leave. Plaintiff's termination came less than a month after she submitted her FMLA paperwork, and a mere twelve days after approval of her request. But such temporal proximity, standing alone, is insufficient to withstand summary judgment. *See Sauzek v. Exxon Coal USA, Inc.*, 202 F.3d 913, 918 (7th Cir., 2000). Plaintiff must provide some further evidence which ties the adverse action to her exercise of protected leave. *See id.*

While Plaintiff argues that the two acts of discipline were unfounded and improperly investigated, neither failure points to an inference of retaliation. Indeed, it is clear that the final written warning which put Plaintiff on the edge of termination was issued prior to discovery of Plaintiff's pregnancy or any assertion of her rights under the FMLA. No stray remark concerning Plaintiff's use of FMLA leave exists to connect Ginger Johns' alleged failure to investigate the patient complaint adequately. Nor are there any other bits and pieces of circumstantial evidence which point directly to a retaliatory intent on the part of Defendant. Plaintiff fails to provide evidence of retaliation under either the direct or indirect method, and Defendant's Motion for Summary Judgment will be **granted** as to this claim.

### *3. Pregnancy Discrimination*

Under Title VII, it is unlawful for covered employers to discriminate against any individual because of that individual's sex.

*See* 42 U.S.C. § 2000e-2(a)(1). Discrimination "because of sex" is defined to include discrimination "because of or on the basis of pregnancy, childbirth, or related medical conditions." 42 U.S.C. § 2000e(k). As with other claims under Title VII, Plaintiff may prove her claim of pregnancy discrimination using either the direct or indirect method. *See Venturelli v. ARC Cmty. Servs., Inc.*, 350 F.3d 592, 599 (7th Cir., 2003).

Because Plaintiff again fails to demonstrate, or even discuss, the existence of similarly situated individuals who received better treatment, she fails to state a *prima facie* case under the indirect method. Nor can she establish sufficient evidence under the direct method to withstand summary judgment on her claim. The November 29 Corrective Action Form provides no direct or circumstantial evidence of an intent to discriminate on the basis of pregnancy. It makes no statement about the reason for the absences and makes no predictions about how Plaintiff's pregnancy might affect her future attendance record. Indeed, the notice makes no mention of Plaintiff's pregnancy at all. It simply evinces dissatisfaction with Plaintiff's failure to appear for work, and a decision to fire her for that reason. Nothing in the Pregnancy Discrimination Act prevents an employer from making such a decision, even if those absences are due to complications of pregnancy. *See Dormeyer v. Comerica Bank-Illinois*, 223 F.3d 579, 583 (7th Cir., 2000).

There must be some further evidence which indicates that the decision to terminate was actually motivated by the fact of

Plaintiff's pregnancy, and not merely its effects. *See Marshall v. American Hosp. Ass'n*, 157 F.3d 520, 526 (7th Cir., 1998). No such additional evidence has been presented here. The timing is not suspicious, as Plaintiff's termination came some two or three months after the announcement of her pregnancy. There are no disparaging or ambiguous remarks presented. Nor are there any further bits and pieces of circumstantial evidence pointing to an intent to discriminate on the basis of pregnancy. Accordingly, the Motion for Summary Judgment must be **granted** as to this claim.

### III. <u>CONCLUSION</u>

For the reasons stated herein, Defendant's Motion to Strike is **granted** as to Plaintiff's response to paragraph 33, **but otherwise denied**. Defendant's Motion for Summary Judgment is **granted as to** Plaintiff's claims of pregnancy discrimination and FMLA retaliation, **but denied as to** the claim of FMLA interference.

**IT IS SO ORDERED.**

 Harry D. Leinenweber, Judge
 United States District Court

**DATE:** November 13, 2008